UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN JOHNSON,

        Plaintiff,

v.                               Case No:  2:13-cv-656-FtM-29CM

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION[1]

Before the Court is Plaintiff John Henry Johnson's ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claims for disability and disability insurance benefits and supplemental security income.   For the reasons discussed herein, the Court recommends that the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

## I.    Issues on Appeal

Plaintiff raises three issues on appeal, specifically that: (1) the Administrative Law Judge's ("ALJ") assessment that Plaintiff has the residual functional capacity ("RFC") to perform medium work is not based upon substantial evidence; (2) the ALJ erred by failing to consider all of Plaintiff's severe impairments in assessing Plaintiff's RFC because he failed to account for any limitations caused by Plaintiff's headaches

---

[1]   Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

or syncope spells; and (3) the ALJ committed reversible error when he failed to explain how Plaintiff's daily activities conflicted with his inability to work full-time.

## II.     Procedural History

On April 2, 2010, Plaintiff filed applications for a period of disability and disability insurance benefits and supplemental security income, alleging a disability onset date of February 28, 2009.   Tr. 12, 110-25.   His applications were denied both initially on July 29, 2010 and on October 26, 2010, upon Plaintiff's request for reconsideration.   Tr. 87-89, 91-93; Tr. 99-100, 102-03.   Plaintiff then requested and received a hearing before ALJ Ronald S. Robins on December 27, 2011, during which he was represented by counsel.   Tr. 25-47.   On March 13, 2012, the ALJ issued an unfavorable decision, finding that Plaintiff is not disabled and denying his claim for benefits.   Tr. 12-20.   Plaintiff requested review by the Appeals Council, which was denied on August 15, 2013.   Tr. 1-5.   Plaintiff timely filed his Complaint in this Court, pursuant to 42 U.S.C. § 405(g), on September 11, 2013 (Doc. 1).   The matter has been fully briefed and is now ripe for review.

## III.     Summary of the ALJ's Decision

The ALJ first determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2014.   Tr. 14.   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 28, 2009, the alleged onset date ("AOD").   Tr. 14.   The ALJ noted that Plaintiff worked after the AOD, but determined that his work activity did not rise to the level of substantial gainful activity.   Tr. 14.

At step two, the ALJ determined that Plaintiff had "the following severe impairments: hypertension, leg pain consistent with claudication, history of pancreatitis and fatty liver, degenerative joint disease, alcohol dependence, and cannabis use (in full remission) (20 CFR 404.1520(c) and 416.920(c))."  Tr. 14.  The ALJ also found that Plaintiff's alleged mental impairments were not severe, noting the lack of medical records to support such a finding and the absence of any psychiatric treatment, counseling or hospitalizations.  Tr. 14-15.  The ALJ noted that Plaintiff did not allege at the hearing that he is unable to work due to any mental impairments, only physical ailments.  Tr. 15.  He acknowledged that Plaintiff testified to problems with memory, concentration and focus but noted that Plaintiff attributed those symptoms to dealing with pain.  Tr. 15.  Notwithstanding the impairments the ALJ found to be severe at step two of the sequential evaluation, at step three the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 15.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).  Tr. 25.  The ALJ determined that Plaintiff could frequently climb ramps or stairs, balance, stoop and crouch; could occasionally kneel and crawl; and could never climb ladders, ropes or scaffolds.  Tr. 15.  The ALJ discussed the medical evidence of record and stated that it did not reveal the kinds of clinical and laboratory abnormalities that one would expect to find in a disabled person and noted that many of Plaintiff's physical

examinations were normal or showed only slight limitations and diagnostic tests showed only mild abnormalities.   Tr. 16.   The ALJ determined that Plaintiff's daily activities also were not as limited as one would expect given his complaints of disabling symptoms and limitations and that Plaintiff was able to perform work-related functions within his RFC.   Tr. 18.

The ALJ then determined that Plaintiff is unable to perform his past relevant work ("PRW").   Tr. 18.   At step five, the ALJ considered that Plaintiff was born on January 23, 1956 and was 53 years old on the AOD, which is defined as an individual of "advanced age," has a high school education and is able to communicate in English. Tr. 18-19.   He also considered the VE's testimony that Plaintiff could perform the job of steel post installer, DOT 821.687-010 but noted the dearth of available such jobs in the national, state and regional economy.   The ALJ noted, however, that the VE identified other jobs that Plaintiff could perform that exist in significant numbers in the national economy, such as kitchen helper (DOT 318.687-010) and laundry worker (DOT 361.685-018).   Tr. 19.   Upon consideration of Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff acquired work skills from his PRW that are transferrable to other occupations with jobs existing in significant numbers in the national economy.   Tr. 19.   He therefore determined that Plaintiff is not disabled.   Tr. 20.

## IV.   Social Security Act Eligibility and Standard of Review

To be entitled to benefits, a claimant must be disabled.   A "disability" reflects the inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.   A "physical or mental impairment" is an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques, and the impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity which exists in the national economy.   42 U.S.C. §§ 423(d)(2) and (3); 20 C.F.R. §§ 404.1508-404.1509.

The SSA promulgated regulations detailing a sequential evaluation process to be used in determining whether a claimant is disabled.   20 C.F.R. §§ 404.1520, 416.920.   The evaluation process requires the ALJ to determine, in sequence, whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment; whether the severe impairment meets or equals the medical criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his PRW.

If the ALJ determines the claimant cannot perform his PRW, the final step of the evaluation process requires the ALJ to determine if the claimant can perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a).   The claimant bears the burden of persuasion through step four, and at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   A claimant is entitled to benefits only if the

ALJ determines that he is unable to perform his past work or any other work.   *Id.* at 141-42.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether his findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).   A determination by the Commissioner that a claimant is not disabled must be upheld if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla; the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision, *Foote,* 67 F.3d at 1560, and must affirm the decision of the Commissioner if the decision is supported by substantial evidence even if the reviewer would have reached a contrary result or finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   Credibility determinations fall within the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and a reviewing court will not disturb a clearly articulated credibility finding with substantial

supporting evidence in the record, nor will it reweigh the evidence.   *Foote,* 67 F.3d at 1560, 1562.

V.   **Relevant Evidence**

a.   *Plaintiff's testimony and reports*

At the time of the hearing, Plaintiff was fifty-five years old and had earned a high school degree.   Tr. 30.   He alleged that he is unable to work due to pain, mainly in his back and left shoulder.   Tr. 27-28, 32.   Plaintiff testified that he experiences shortness of breath, heavy breathing, vomiting blood, congestion and frequent urination due to an enlarged prostate.   Tr. 39-40.   Plaintiff reported that he had been recently diagnosed with cancer and that he experiences problems with concentration and short term memory due to his pain.   Tr. 41-42.

Plaintiff alleges that he suffers from side effects of his medications, including dizziness, lightheadedness, wooziness, drowsiness, vomiting and nausea.   Tr. 33. Plaintiff testified that he is unable to climb stairs, can only walk about 1,500 feet at a time and can stand for only 10 minutes and sit for only 30 minutes at a time.   Tr. 34.   He further testified that he can lift up to 30 pounds but has trouble reaching with his left arm and difficulty stooping, bending, twisting, squatting, kneeling and balancing while walking on uneven surfaces.   Tr. 34-35.   He visits friends, goes to church and does other social activities when he is able.   Tr. 37.   He testified that he is not depressed and does not get anxiety or panic attacks.   Tr. 38.

Plaintiff reported that problems with his liver, heart and pancreas, pain and dementia prevent him from working.   Tr. 139.   He also reported that he stopped

working on March 15, 2008 because he failed a drug test and that he had never seen a doctor for any mental conditions.   Tr. 139-40, 142-43.   Plaintiff prepares his own meals weekly, goes outside every day, walks, rides in and drives a car, can go out alone, shops for food in stores and can count change but has difficulty performing personal care activities and household chores.   Tr. 158-59.   He reported that he cannot pay bills, handle a savings account or use a checkbook or money orders due to bad eyesight and memory.   Tr. 159.   Plaintiff reported that he does not spend time with others, needs to be reminded to go places and must be accompanied by his wife when he goes out, but also reported no difficulty getting along with others and that there have been no changes in his social activities due to his conditions.   Tr. 160-61.

### b.   Third party non-medical evidence

Plaintiff's wife, Bobbie Johnson, reported that Plaintiff watches television and makes the bed daily.   Tr. 164.   She stated that Plaintiff can hardly drive and that his conditions affect his sleep but also reported that he has little to no difficulty with personal care and is able to prepare his own meals and perform household chores. Tr. 165-66.   She also reported that Plaintiff gets out of breath easily while walking, has a hard time remembering things and difficulty bending and squatting.   Tr. 171.

### c.   Medical evidence

Plaintiff submitted a multitude of medical records in support of his claim.   A brief recitation of the relevant evidence follows.

Plaintiff was admitted to Lee Memorial Hospital on March 8, 2005 with complaints of right lower leg pain.   Tr. 304.   He was given injections of Demerol and

Phenergan, prescriptions for Percocet and Valium and instructed not to operate machinery because the medications cause drowsiness.   Tr. 304.   Plaintiff was discharged on March 9, 2005 with diagnoses of back pain and sciatica.   Tr. 304.

July 14, 2006 records from Southwest Florida Regional Medical Center state that Plaintiff was diagnosed with very mild gastritis and small internal hemorrhoids. Tr. 231.   The clinical notes and impressions indicate pancreatitis likely due to alcohol and elevated carcinogen levels likely due to his smoking, and alcohol cessation and rehab were recommended.   Tr. 231-32.   Records from an exam at Gulf Coast Medical Center on July 1, 2006 identify mildly echogenic liver suggestive of mild fatty infiltration.   Tr. 241.

Plaintiff was admitted to Lee Memorial Hospital on February 16, 2009 with complaints of chest pain.   Tr. 299.   The record notes that Plaintiff was previously prescribed blood pressure medication but had not taken any for the past year.   Tr. 299.   Plaintiff denied chest discomfort, shortness of breath, chest pressure, heaviness and squeezing.   Tr. 301.   He was discharged on February 17, 2009 against medical advice with diagnoses of chest pain secondary to malignant hypertension, uncontrolled hypertension, hyperlipidemia, alcohol abuse and tobacco dependence.   Tr. 303.   Records from First Care Medical Centers dated March 23, 2009 note mild emphysematous changes in the lungs but no active disease.   Tr. 313. June 4, 2009 records indicate that Plaintiff had an elevated liver function test, indicating hepatomegaly with fatty infiltration in the liver.   Tr. 410.

Records from Florida Heart Associates dated June 17, 2009 include diagnoses of hyperlipidemia, hypertension-essential (benign) and syncope.  Tr. 249.  Those records also note Plaintiff's history of dizziness, syncopal episodes, hypertension, hyperlipidemia, tobacco use and alcohol abuse but state that Plaintiff's lightheadedness and dizziness had improved with medication.  Tr. 249.  Plaintiff denied any syncopal episodes, chest pain or shortness of breath.  Tr. 249.  The results of Plaintiff's May 20, 2009 cardiac examination were normal.   Tr. 253-55.

August 20, 2009 records from First Care Medical Centers, P.A. show a diagnosis of COPD with no acute disease.  Tr. 286.  June 4, 2009 records note impressions of hepatomegaly with fatty infiltration in the liver.  Tr. 287.  October 3, 2009 records from Lee Memorial Health System state that Plaintiff's mediastinum, heart and pulmonary vasculature were normal, his lungs were clear of infiltrate or effusion and visualized bony thorax and soft tissues were normal.  Tr. 331.  These records state that there was no change from the previous exam conducted February 16, 2009.  Tr. 331.  Records from the October 3, 2009 visit also state that Plaintiff had "an episode of vomiting but he had been drinking alcohol" and note that he had "the strong smell of alcohol on his breath."  Tr. 333.   He was given a liter of normal saline, diagnosed with headache, vomiting and alcohol intoxication and urged to follow up with his physician.   Tr. 333.

On March 13, 2010, Plaintiff sought treatment at Lee Memorial Hospital for vomiting and diarrhea.  Tr. 406.  Plaintiff was diagnosed with viral syndrome including viral gastroenteritis, dehydration, electrolyte abnormalities and pathogenic

gastrointestinal organisms.   Tr. 407-08.   He received two liters of normal saline and Phenergan intravenously and was discharged in good condition with prescriptions for medications and instructed to follow up with his doctor.   Tr. 408.

Plaintiff sought treatment from Lee Memorial Health System on July 11, 2010 for abdominal pain.   Tr. 464.   Chest examinations and testing revealed no evidence of acute cardiopulmonary disease and a CT scan of Plaintiff's abdomen revealed that the lung bases and heart were unremarkable and Plaintiff's gallbladder, spleen, pancreas, adrenal glands and appendix appeared normal.   Tr. 460-61.   A sonogram of Plaintiff's right upper quadrant revealed fatty infiltration of the liver but the test was otherwise negative.   Tr. 463.   Treatment notes state that "[o]n repeat examination the patient's pain has resolved and the patient is doing quite well."   Tr. 465.   Diagnoses were acute abdominal pain, biliary colic and sigmoid diverticulosis with clinical evidence of early diverticulitis.   Tr. 465.   Plaintiff was given medications and instructed to follow up with his regular doctor.   Tr. 465.

VA records dated September 8, 2010 reflect hyperinflation of the lungs with no focal pulmonary consolidation or pleural effusion and minimal wedging of L1 with mild narrowing at the L1-L2 disc space, mild facet joint degenerative changes along the lumbosacral junction and possible kidney stone.   Tr. 554.   Following a visit to Lee Memorial Hospital on December 3, 2010, Plaintiff was diagnosed with cholelithiasis, acute appendicitis and ureteral colic.   Tr. 622.   Plaintiff was discharged and instructed to follow up with his primary care doctor.   Tr. 622.

VA Records dated December 7, 2010 identify cholelithiasis and subtle heterogeneous differences in the pancreatic neck and cystic degenerative changes, greater tuberosity and osteoarthritis of the acromioclavicular joint.   Tr. 551-52. Records dated March 18, 2011 show a very small pleural-based nodule, for which follow-up visits were recommended after 12 and 24 months; cholelithiasis without gross evidence of cholecystitis or dilated intra or extrahepatic ducts; large calcification within the cortex of the left kidney probably representing a granuloma; nonspecific small hypodensity right renal cortex, for which an additional evaluation with ultrasound was recommended; enlarged heterogeneous prostate gland; and thickened urinary bladder wall suggesting trabeculation.   Tr. 540.

Progress notes from the VA dated May 31, 2011 reflect a history of alcoholic liver disease with portal hypertension and esophageal varices and cholelithiasis.   Tr. 610-11.   June 10, 2011 records state impressions of minimal duodenitis and internal hemorrhoids, and July 7, 2011 records include a diagnosis of prostatomegaly with lower urinary tract symptoms.   Tr. 606, 607, 609.   VA records from August 24, 2011 identify a right middle lobe lung nodule and left lower lobe lung nodule, both with no adverse changes since at least March 15, 2011; a tiny cortical cyst in Plaintiff's right kidney; and moderate nonspecific prostate enlargement and modest circumferential bladder wall thickening.   Tr. 592.

### d. Psychological evidence

Steven Wise, Psy.D., performed a psychiatric assessment of Plaintiff on July 29, 2010 and determined that his substance addiction disorders were not severe.   Tr.

468.   Dr. Wise considered the paragraph B criteria and found that Plaintiff has mild restriction in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of an extended duration.   Tr. 478.   Dr. Wise further noted Plaintiff's history of alcohol use, dementia and record of depression and anxiety but found no mental defects after conducting a face-to-face interview.   Tr. 480.   He determined that Plaintiff has no memory deficits or evidence of dementia and noted Plaintiff's history of alcohol dependence but found no current substance abuse problems.   Tr. 480.   Dr. Wise considered Listing 12.09 when rating Plaintiff's impairments not severe.   Tr. 480.

Plaintiff had a consultation with Licensed Clinical Social Worker Reginald M. Bruno on August 26, 2010.   Tr. 495.   Mr. Bruno found Plaintiff to be oriented, cooperative and reasonable; his language intact but his speech difficult to understand at times; his affect "congruent with mood" and flat and his mood "depressed." Plaintiff's thought processes and association were normal and coherent and his thought content was normal; he had limited insight and impaired judgment; his memory was intact and his "fund of knowledge" was average.   Tr. 496-97.   Plaintiff's noted clinical disorders were alcohol dependence and anxiety disorder, his psychosocial stressors were identified as financial and job-related, and his GAF score was 55.   Bruno referred Plaintiff for further treatment.   Tr. 197-98.

October 5, 2010 records from the Fort Myers VA Outpatient Center state that Plaintiff had a GAF score of 50.   Tr. 490.   His mental status was described as alert

and oriented to person, place, time and event; his affect and behavior were congruent with his mood; his thoughts were relevant; his cognition was identified as "attentive, memory impairment"; his insight reflected some understanding; and his judgment indicated that he appreciates behavioral consequences, accepts his problems and is fair and impulsive.   Tr. 491-92.   The VA determined that Plaintiff met the diagnostic criteria for a substance abuse disorder.   Tr. 492.

Elizabeth Michalec, Ph.D., performed a psychiatric assessment on October 22, 2010 and determined that Plaintiff's affective disorders, anxiety-related disorders and substance addition disorders were not severe.   Tr. 513.   Dr. Michalec identified alcohol dependence and cannabis abuse as medically determinable mental impairments.   Tr. 521.   Dr. Michalec considered the paragraph B criteria and found that Plaintiff had mild restriction in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of an extended duration.   Tr. 523.   She noted that evidence did not establish the presence of "C" criteria.   Tr. 524. In making that determination, Dr. Michalec considered reports from Plaintiff and his wife and Plaintiff's medical records.   Tr. 525.   Dr. Michalec determined that the bulk of evidence suggested that Plaintiff subjectively reports depressed mood and pain, supporting her diagnosis of adjustment disorder with anxiety and depressed mood.   Tr. 525.   She also found that Plaintiff's mental symptoms are treatable but noted that he declined the need for treatment.   Tr. 525.

*e.  State agency examinations*

Single decisionmaker ("SDM") Shea Vlcek completed a physical RFC assessment of Plaintiff on December 3, 2009.  Tr. 381-88.  Vlcek identified Plaintiff's exertional limitations as occasionally able to lift and/or carry up to 20 pounds, frequently able to lift and/or carry up to 10 pounds, able to stand and/or walk with normal breaks about 6 hours in an 8-hour workday and able to sit with normal breaks for about 6 hours in an 8-hour workday.  Tr. 382.  Vlcek reported that Plaintiff had no limitation in his ability to push and/or pull, except as limited by his ability to lift and/or carry.  Tr. 382.  Vlcek identified Plaintiff's postural limitations as frequently balancing, stooping, kneeling, crouching and crawling; occasionally climbing ramp/stairs; and never climbing ladder/rope/scaffolds.  Tr. 383.  Vlcek found that Plaintiff had no manipulative, visual or communicative limitations but should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other potential hazards (such as machinery and heights).  Tr. 384-85.  Vlcek determined that the severity of Plaintiff's symptoms and the alleged effects on his ability to function were consistent with the total medical and nonmedical evidence; specifically, that Plaintiff's medically determinable impairments of hypertension, alcohol abuse and orthostatic hypotension were supported by credible medical evidence.  Tr. 386.  Vlcek also noted that cessation of alcohol and smoking would improve all of Plaintiff's symptoms.  Tr. 386.

Records from Plaintiff's June 19, 2010 consultative examination conducted by Stanley Rabinowitz, M.D., note essential hypertension, controlled on therapy;

intermittent history of dizziness; probable degenerative joint disease; leg pain consistent with claudication and chronic alcohol dependence and probable fatty liver. Tr. 451.   Dr. Rabinowitz noted that Plaintiff does not take medication for joint or back pain, has never had an evaluation for leg pain, and the record contains no evidence of surgery or previous venous or arterial disease.   Tr. 448.   Upon examination, Dr. Rabinowitz found joint stiffness but no joint swelling.   Tr. 448. Dr. Rabinowitz further found that Plaintiff's speech was clear and understandable, his communication was intact, his hearing was normal and he walks normally without an assistive device.   Tr. 449.   Dr. Rabinowitz noted no evidence of active joint inflammation, joint deformity, instability, contracture or paravertebral muscle spasm and that Plaintiff could forward flex his lumbar spine and touch his toes.   Tr. 450.   Plaintiff's grip strength was normal and his digital dexterity was not impaired but Plaintiff had mild difficulty squatting with support.   Tr. 450.   Plaintiff also had normal sensory examination and normal reflex, motor strength and cerebellar testing.   Tr. 450.

SDM Terri Johnson completed a physical RFC assessment of Plaintiff on June 30, 2010.   Tr. 75-82.   Johnson identified Plaintiff's exertional limitations as occasionally able to lift and/or carry up to 50 pounds, frequently able to lift and/or carry up to 25 pounds, able to stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday and able to sit with normal breaks for a total of about 6 hours in an 8-hour workday.   Tr. 76.   Johnson reported that Plaintiff had no limitation in his ability to push and/or pull, except as limited by his ability to lift

and/or carry.   Tr. 76.   Johnson determined that the evidence supported the RFC because Plaintiff's records and test results were largely normal.   Tr. 76.   Johnson identified Plaintiff's postural limitations as frequently climbing ramps, stairs, ladders, ropes and scaffolds; frequently balancing, kneeling, crouching and crawling; and occasionally stooping.   Tr. 77.   Johnson found that Plaintiff had no manipulative, visual or communicative limitations but should avoid concentrated exposure to hazards due to his hypertension and syncope.   Tr. 78-79.   Johnson determined that evidence established a medically determinable impairment, that Plaintiff's allegations were partially credible and that his RFC was feasible.   Tr. 80.

Medical consultant Albert Ponterio, M.D., completed a physical RFC assessment of Plaintiff on October 26, 2010 and determined Plaintiff's exertional limitations as occasionally able to lift and/or carry up to 50 pounds; frequently able to lift and or carry up to 25 pounds; able to stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday; and able to sit with normal breaks for about 6 hours in an 8-hour workday.   Tr. 528.   Dr. Ponterio determined that Plaintiff was not limited in his ability to push and/or pull, except as limited by his ability to lift and/or carry.   Tr. 528.   As to Plaintiff's postural limitations, Dr. Ponterio determined that Plaintiff was frequently able to climb ramps and stairs, balance, stoop and crouch; occasionally able to kneel and crawl; and never able to climb ladders, ropes and scaffolds.   Tr. 529.   He found that Plaintiff had no manipulative, visual, communicative or environmental limitations.   Tr. 530-31. Ultimately, Dr. Ponterio determined that Plaintiff's allegations were not fully

supported by medical evidence and that he was capable of the RFC as stated following his assessment.   Tr. 532.

### f.  Vocational Expert testimony

Vocational Expert ("VE") Ruth Horvath testified at Plaintiff's hearing before the ALJ.   She identified Plaintiff's PRW as pipe layer in construction, DOT title 869.664-014, semi-skilled with SVP of 4.[2]   Tr. 44.   The VE testified that Plaintiff acquired skills such as structural fabricating, installing and repairing during his PRW that are transferrable to skilled or semi-skilled work at the medium exertional level.   Tr. 44.   The VE identified the position of steel post installer, DOT 821.687-010, semi-skilled with SVP of 3[3] and medium exertion, as an example of a position to which Plaintiff's skills transfer.   Tr. 44-45.   The VE testified that there are 1,127 such jobs in the nation, 226 in the state and only one in the region.   Tr. 45.

The ALJ then posed the following hypothetical:

> I have a fifty-five year old male with a GED, and a work history similar to the claimant with the following limitations.   The individual can frequently lift 25 pounds, and occasionally lift 50 pounds.   The individual can stand or walk about six hours in an eight-hour day, sit about six hours in an eight-hour day, unlimited with regard to pushing and pulling of hand and foot controls.   The

---

[2] SVP is specific vocational preparation and refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, Appendix C; *see also Battle v. Astrue*, 243 Fed. Appx. 514, 518 n.3 (11th Cir. 2007).   An SVP of 4 means that the time required is over 3 months up to and including 6 months to learn the techniques, acquire the information and develop the facilities needed for average job performance.   *Dictionary of Occupational Titles*, Appendix C.

[3] An SVP of 3 means that the time required is over 1 month up to and including 3 months to learn the techniques, acquire the information and develop the facilities needed for average job performance.   *Dictionary of Occupational Titles*, Appendix C.

> individual would be unable to climb ladders, ropes, and scaffolds, frequently climb ramps and stairs, balance, stoop, crouch, and occasionally kneel and crawl. Could such an individual be able to perform any of the past relevant work of the claimant?

Tr. 45. The VE responded that such an individual could not perform Plaintiff's PRW, but the individual could perform the job of steel post installer. Tr. 45. The VE testified that Plaintiff could also perform the jobs of kitchen helper, DOT 318.687-010, unskilled with an SVP of 2[4] and medium exertion. Tr. 45. The VE identified 381,972 such jobs in the nation, 32,418 jobs in the state and 1,004 in the region. Tr. 45. She also testified that Plaintiff could work as a laundry worker, DOT 361.685-018, unskilled with an SVP of 2 and medium exertion. Tr. 45-46. She identified 98,523 such jobs in the nation, 6,287 in the state and 188 in the region. Tr. 46. If the ALJ were to find Plaintiff's testimony credible, however, the VE testified that he would not be productive in any job in the national economy. Tr. 46.

## VI. Analysis

### a. Whether the ALJ's assessment that Plaintiff has the RFC to perform medium work is supported by substantial evidence

At step four, the ALJ found that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c). Tr. 25. He determined that Plaintiff can frequently climb ramps or stairs, balance, stoop and crouch; can occasionally kneel and crawl; and can never climb ladders, ropes or scaffolds. Tr. 15.

---

[4] An SVP of 2 means that the time required is anything beyond a short demonstration up to and including 1 month to learn the techniques, acquire the information and develop the facilities needed for average job performance. *Dictionary of Occupational Titles*, Appendix C.

Plaintiff contends that the ALJ's conclusion that Plaintiff's severe impairments are not disabling is not supported by substantial evidence, because his impairments cause significantly more limitation than found by the ALJ's RFC.   Doc. 13 at 18. Specifically, Plaintiff argues that the ALJ failed to explain his conclusions that Plaintiff is able to lift/carry up to 50 pounds occasionally and 25 pounds frequently, stand and/or walk for a total of 6 hours in an 8-hour workday and sit for a total of 6 hours in an 8-hour workday, when none of Plaintiff's treating physicians offered opinions consistent with this RFC.   *Id.* at 19.   Defendant contends that the ALJ properly determined Plaintiff's RFC and that it is supported by substantial evidence, particularly the opinions of consultative examiner Dr. Rabinowitz and state agency examiner Dr. Ponterio.   Doc. 14 at 4-7.

"Medium work is defined as work that involves lifting no more than 50 pounds at a time, with frequent lifting or carrying objects that weigh 25 pounds."   *Davis v. Barnhart*, 186 Fed. Appx. 965, 966 (11th Cir. 2006) (citing 20 C.F.R. § 404.1567(c)). The rulings explain that the ALJ's RFC assessment must identify and describe the specific medical and nonmedical evidence that supports each conclusion and explain how any material inconsistencies or ambiguities in the record were considered and resolved.   SSR 96-8p.   After reviewing the record, the Court finds the ALJ's opinion is supported by substantial evidence.   In finding that Plaintiff can perform medium work, the ALJ considered Plaintiff's symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence as required by 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p.   Tr. 15.   He stated

that he also considered opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.   Tr. 15.

The ALJ discussed the consultative examination performed by Dr. Stanley Rabinowitz on June 21, 2010, who noted that Plaintiff walked normally without an assistive device and had normal range of motion in all areas, normal grip strength and dexterity in both hands, a normal sensory examination and reflex testing and normal motor strength and cerebellar testing and diagnosed Plaintiff with intermittent history of dizziness, probable degenerative joint disease, leg pain consistent with claudication, chronic alcohol dependence and probable fatty liver. Tr. 17.

The ALJ also discussed the RFC conclusions of Dr. Albert Ponterio, the state agency physician, who opined that Plaintiff can perform medium work activity.   Tr. 18.   Specifically, Dr. Ponterio determined Plaintiff's exertional limitations as occasionally able to lift and/or carry up to 50 pounds; frequently able to lift and/or carry up to 25 pounds; able to stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday; and able to sit with normal breaks for about 6 hours in an 8-hour workday.   Tr. 528.   The ALJ explained that he gave "considerable weight" to Dr. Ponterio's opinion, because he "is a non-examining expert, is familiar with this disability program and its evidentiary requirements, reviewed all documentary medical [evidence] available at the time, and supported his opinion with an explanation based upon objective data."   Tr. 18.   Findings of fact made by state agency medical and psychological consultants as to the nature and

severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).   The ALJ also stated that the record does not contain any evidence or treating source opinion that Plaintiff is more limited than as provided in his RFC.   Tr. 18.

The ALJ discussed additional medical evidence, including that Plaintiff had an annual physical in August 2010 that was normal and noted that, although Plaintiff alleges that he suffers from various side effects of medications, medical records do not corroborate any side effects severe enough to interfere with his ability to perform work as established by his RFC.   Tr. 18.   The ALJ also noted that the record contains evidence that Plaintiff stopped working not due to his medical conditions, but because he was fired from his job for failing a drug test and having alcohol on his breath at work.   Tr. 18.   Although not cited by the ALJ in his opinion, SDM Terri Johnson's physical RFC assessment of Plaintiff on June 30, 2010 also supports the RFC.   That assessment identified Plaintiff's exertional limitations as occasionally able to lift and/or carry up to 50 pounds, frequently able to lift and/or carry up to 25 pounds, able to stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday and able to sit with normal breaks for a total of about 6 hours in an 8-hour workday.   Tr. 76.   Moreover, Plaintiff reported that he is able to lift up to 50 pounds on an April 23, 2010 supplemental cardiac questionnaire form.   Tr. 154.

The ALJ considered the record evidence in accordance with the regulations and determined that Plaintiff is capable of performing medium work, with restrictions.

The ALJ adequately explained his findings, which are supported by substantial evidence in the record.

> b.  *Whether the ALJ erred by failing to consider all of Plaintiff's severe impairments in his assessment of Plaintiff's RFC because he failed to account for any limitations caused by Plaintiff's headaches or syncope spells*

Plaintiff argues that the ALJ is required to consider all of his impairments, whether severe or not, in assessing his RFC and is also required to address Plaintiff's remaining exertional and nonexertional capacities.   Doc. 13 at 21.   Specifically, Plaintiff contends that the ALJ failed to discuss how his chronic headaches and recurring episodes of syncope would affect his ability to perform mental work activities, in violation of SSR 96-8p.   *Id.* at 22-23.   Defendant argues that Plaintiff failed to meet his burden of establishing that he is disabled and that the ALJ noted that Dr. Wise and Dr. Michalec both opined that Plaintiff had only mild limitations. Doc. 14 at 7-8.   Defendant concedes, however, that the doctors were evaluating mental disorders, not headaches or syncope.   *Id.* at 8.

"The ALJ must consider every impairment alleged."   *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).   When determining a claimant's RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   20 C.F.R. § 404.1545(a)(2); SSR 96-8p.   The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.   *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

Plaintiff did not allege that headaches or syncope were a cause of his disability either in documents submitted in support of his claim or at the hearing before the ALJ.[5]   Thus, the ALJ was not required to specifically address or consider those conditions.   *Robinson v. Astrue*, 365 Fed. Appx. 993, 995-96 (11th Cir. 2010) (stating the ALJ had no duty to consider the plaintiff's chronic fatigue syndrome when the plaintiff neither asserted CFS as a basis for disability in her application nor at the hearing); *Street v. Barnhart*, 133 Fed. Appx. 621, 627 (11th Cir. 2005) (stating that plaintiff's failure to list his mental impairments in SSI application or testify to them at the hearing was a basis to dispose of his claim).   Nor was the ALJ required to discuss every piece of evidence submitted by Plaintiff in support of his claims. *Cooper v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 803, 808-09 (11th Cir. 2013) ("An ALJ is not required to refer specifically to each piece of evidence in the record, but must sufficiently explain the weight given to obviously probative exhibits." (quotation marks omitted)).

At step two, the ALJ determined that Plaintiff had the severe impairments of hypertension, leg pain consistent with claudication, history of pancreatitis and fatty liver, degenerative joint disease, alcohol dependence and cannabis use (in full remission). Tr. 14.   The ALJ also explained his determination that Plaintiff's mental impairments were not severe by stating "[t]here is quite simply a lack of

---

[5] Plaintiff raised a similar argument that the ALJ failed to fully evaluate Plaintiff's syncope spells in his brief submitted to the Appeals Council.   *See* Tr. 227-28.   The Appeals Council found no reason to review the ALJ's decision and denied Plaintiff's request for review. *See* Tr. 1-6.

medical records which would support a finding of severity with regard to the alleged mental impairments" and noted the absence of psychiatric treatment, counseling or hospitalization.   Tr. 14-15.   He acknowledged that Plaintiff testified to problems with memory, concentration and focus, but noted that Plaintiff attributed those symptoms to dealing with pain.   Tr. 15.   The ALJ further noted that Plaintiff did not allege that he is unable to work due to any mental impairments.   Tr. 15.

Plaintiff bears the ultimate burden of proving that he is disabled and must furnish medical and other evidence to support such a finding.   42 U.S.C. § 423(d)(5)(a); 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c).   Plaintiff neither alleged nor provided evidence that his headaches or syncope affected his ability to perform basic work activity, and accordingly did not satisfy his burden to prove that he had additional severe impairments or limitations beyond those found by the ALJ.   The ALJ properly identified Plaintiff's severe impairments at step two in accordance with the regulations and considered the extent to which all of Plaintiff's impairments affect his RFC, as required at step four.   Upon review, the ALJ's decision is supported by substantial evidence.

> c. *Whether the ALJ failed to explain how Plaintiff's daily activities conflicted with his inability to work full-time*

Finally, Plaintiff contends that the ALJ is required to make a finding as to the credibility of his statements and that the ALJ may not disregard subjective complaints merely because they are not entirely supported by objective medial evidence.   Doc. 13 at 23-24.   Plaintiff argues that the ALJ's statement that Plaintiff's daily activities "are not limited to the extent one would expect, given the

complaints of disabling symptoms and limitations" is not sufficient justification for Plaintiff's RFC, because performing household chores does not necessarily undermine Plaintiff's credibility.   *Id.* at 24-25 (citing Tr. 18).   Defendant argues that the ALJ reviewed the entire record, including Plaintiff's subjective complaints, as required and that Plaintiff's activities of daily living are properly considered in determining a claimant's RFC.   Doc. 14 at 9-11.

Plaintiff correctly argues that a claimant's statements as to the intensity and persistence of pain or other symptoms and how they affect his ability to work may not be disregarded simply because they are not supported by objective medical evidence.   Instead, the ALJ must state specific reasons for his credibility determination and the weight given to subjective statements, which must be supported by the record.   20 C.F.R. § 404.1529(c)(4) (subjective complaints are evaluated in relation to other evidence); SSR 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.").   The ALJ did so here.

Daily activities are properly considered when evaluating complaints of disabling pain.   20 C.F.R. § 404.1529(c)(3)(i).   While the performance of everyday tasks cannot be used as the sole evidence to determine that a claimant is not disabled, Plaintiff's participation in such activities supports the ALJ's determination that he is capable of working, with restrictions.   *See, e.g.*, *Moore*, 405 F.3d at 1212 (noting that the ALJ properly discredited a treating physician's testimony by pointing out the contrasts in the claimants daily activities and the physician's diagnosis); *Wilson v.*

*Barnhart*, 284 F.3d at 1226 (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because her daily activities demonstrated otherwise).

Here, the ALJ stated that Plaintiff's reported daily activities were not consistent with the severity of his alleged limitations.   Specifically, he noted that Plaintiff reported being able to do his own activities of daily living and that his medical problems did not restrict his daily living pattern.   Tr. 18.   The ALJ also noted that, despite Plaintiff reporting that he is unable to perform household chores, his wife reported that he is able to clean the bathroom and vacuum weekly.   Tr. 18. The ALJ also noted that Plaintiff rides his bicycle for transportation, makes the bed every day and can prepare simple meals.   Tr. 18.

A reviewing court will not disturb a clearly articulated credibility finding that is supported by substantial evidence.   *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *Foote*, 67 F.3d at 1562.   In this case, the ALJ properly considered the relevant factors when determining that Plaintiff's statements were not fully credible and articulated specific reasons for doing so.   The ALJ's decision is supported by substantial evidence.

## VII.   Conclusion

Accordingly, for the reasons stated in this Report and Recommendation, it is hereby respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**DONE** and **ENTERED** in Fort Myers, Florida on this 1st day of August, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:

Honorable John E. Steele
Counsel of record